# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA MIDDLE DIVISION

| | |
|---|---|
| **ALFRED BREWSTER, as Administrator of the Estate of and next friend of his Deceased minor grandson Landlee Scout Brewster** )<br>)<br>)<br>)<br>)<br>) | |
| **Plaintiff,** ) | *Jury Trial Demanded* |
| ) | |
| **v.** ) | |
| ) | |
| **DOREL JUVENILE GROUP, INC.;** )<br>)<br>)<br>) | |
| **Defendant.** ) | |

## FIRST AMENDED COMPLAINT

COMES NOW, Alfred Brewster, as the Administrator of the Estate and next friend of his deceased minor grandson Landlee Scout Brewster ("Scout"), and brings the following causes of action pursuant to common law rights, statutory law rights and **pursuant to the Alabama Extended Manufacturers Doctrine ("AEMLD")** against Dorel Juvenile Group, Inc. ("DJG"), who acted to cause and/or contribute to Scout's death:

## **PARTIES**

1.    The Plaintiff Alfred Brewster ("Plaintiff") at all times relevant was and is a resident of Cherokee County, Alabama.

1

2. Scout, at all times relevant was a minor under the age of three (3) and a resident of Cherokee County, Alabama.

3. The plaintiff is the grandfather of Landlee Scout Brewster, whose mother died in the subject accident and whose father is unknown. Plaintiff is Landlee Scout Brewster's next living friend. Plaintiff is the administrator of the Estate of Landlee Scout Brewster.

4. Dorel Juvenile Group, Inc. ("DJG") is a Massachusetts corporation with its principal place of business at 2525 State Street, Columbus, Indiana. Service of process upon Defendant can be had by serving its registered agent for service, David Taylor, 2525 State Street, Columbus, Indiana 47201.

## STATEMENT OF JURISDICTION

5. Jurisdiction and venue are proper in the United States District Court for the Northern District of Alabama, Middle Division pursuant to 28 U.S.C. §1332, as amended, in that there is a complete diversity of citizenship and the matter in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000) exclusive of interest and costs.

6. DJG conducts significant business in this District, through the advertising, promotion and sales of its products including the defective product in the instant case, the Cosco Ambassador Booster Seat.

## STATEMENT OF VENUE

7. Venue is proper in the Northern District of Alabama, Middle Division, pursuant to 28 U.S.C. Section 1391 because the incident giving rise to this action occurred in Cherokee County, Alabama, which is located in the Middle Division of this judicial district.

## FACTUAL ALLEGATIONS

8. DJG sells products under the brand name Cosco.

9. Among the products sold by DJG under the Cosco® brand name, is the Ambassador™ Auto Booster Car Seat –Model Number 22293-BCG (the "Ambassador").

10. On December 20, 2013, Scout was riding as a passenger in the back of a four door Honda Accord (the "Honda") in Cherokee County, Alabama.

11. While riding as a rear seat passenger in the Honda, Scout was properly seated in the subject Ambassador booster seat.

12. At all times relevant and material, Scout was within the height and weight guidelines set forth and issued by DJG for use of the Ambassador booster seat.

13. On December 20 2013, while Scout was a passenger in the rear of the Honda and was seated in the subject Ambassador booster seat, the Honda was involved in a collision with another vehicle on Highway 35, located in Gaylesville, Cherokee County, Alabama.

14. Prior to the accident, Scout had been observed to be correctly positioned and belted into the Ambassador by his grandfather, the Plaintiff.

15. Scout's three-year-old cousin Z.M. was also a passenger in the rear seat of the Honda on December 20, 2013.

16. At the time of the accident on December 20, 2013, Z.M. was secured in a car seat of a different make and model than that of the Ambassador.

17. The Plaintiff had also observed Z.M. in his car seat just prior to the December 20, 2013 accident, just as he had with Scout.

18. Not long after Scout and Z.M. were secured into the rear seat of the Honda by the Plaintiff, the Honda collided with another vehicle.

19. As a result of the negligent design of the Ambassador, during the collision, Scout suffered blunt force body trauma and injury to his intestines.

20. Because of the design defects inherent in the Ambassador during the wreck, though placed and secured in accordance with DJG instructions, which were inadequate and dangerous, Scout died in the subject accident from injuries caused by his use of the Ambassador booster seat.

21. During the collision, Scout's fellow rear-seat passenger Z.M. suffered only a scratched nose.

22. Z.M. was treated and released from a hospital the same day of the accident.

23. The Cherokee County Coroner pronounced Scout dead at the scene of the accident on December 20, 2013 at 3:30 p.m.

24. DJG, at all times relevant was and is engaged in the business of designing the Ambassador.

25. DJG, at all times relevant was and is engaged in the business of construction of the Ambassador.

26. DJG, at all times relevant was and is engaged in the business of assembling the Ambassador.

27. DJG, at all times relevant was and is engaged in the business of testing the Ambassador.

28. DJG, at all times relevant was and is engaged in the business of preparing any warning labels affixed to the Ambassador.

29. DJG, at all times relevant was and is engaged in the business of marketing the Ambassador for retail sale.

30. DJG, at all times relevant was and is engaged in the business of packaging the Ambassador.

31. DJG, at all times relevant was and is engaged in the business of affixing all labeling found on the defective Ambassador product.

32. The Ambassador reached Scout, the end user without any substantial change in the condition in which it was sold by DJG.

## COUNT I

## Alabama Extended Manufacturer's Liability Doctrine (AEMLD)

33. Plaintiffs incorporate each and every allegation and averment of /or contained in each and every preceding paragraph as if they were fully set forth herein.

34. Defendant DJG designed, developed, engineered, tested, manufactured, distributed, marketed and sold the subject Ambassador car seat and reasonably expected it to reach the ultimate consumer in the condition it was in at the time of the subject accident.

35. The subject Ambassador booster seat remained unchanged from the time it was originally manufactured, distributed and sold by DJG until it reached the plaintiff. The Ambassador booster seat was defective and in an unreasonably dangerous condition when it left the hands of the defendant DJG and remained defective and unreasonably dangerous at all times thereafter until it ultimately caused the death of Scout Brewster.

36. At the time the Ambassador booster seat was placed in to the stream of commerce, it was, or should have been, reasonably expected and foreseeable that the booster seat would be used by persons such as the plaintiff in the manner and application in which it was being used at the time of Scout's death.

37. With respect to the design of the Ambassador booster seat, at the time it left the control of the defendant DJG there were safer alternative designs. Specifically, there were alternative designs that, in reasonable probability would have prevented Scout's death. Furthermore, such safer alternative designs were economically and technologically feasible at the time the product left the control of defendant DJG by the application of existing or reasonably achievable scientific knowledge.

38. At the time the Ambassador booster seat left the control of defendant DJG, it was defective and unreasonably dangerous in that it was not adequately designed, manufactured or marketed to minimize the risk of injury or death. By way of example and without limitation, the Ambassador booster seat was unreasonably, dangerously defective and unreasonably dangerous insofar as it was not properly designed for use by a child of the size indicated on the seat and that the Ambassador booster seat was defectively designed. Moreover, the defendant DJG failed to provide adequate instructions and warnings regarding the proper and safe use of the child restraint system and did not instruct or warn as to the manner to avoid the risks and danger involved, including but not limited to the failure to warn that the system is inadequate to protect small children of Scout's age in foreseeable collisions. The warnings and instructions provided were not

adequate because they did not warn that a child must be over 4 years of age to safely use the product. Further, the Ambassador booster seat was defectively marketed in that the defendant DJG indicates the booster seat is safe for someone Scout's size and age, when it is not.

39. As a direct and proximate consequence of the defective and unreasonably dangerous design, manufacture, sale, and lack of adequate warnings and instructions on the subject Ambassador booster seat, Scout was killed while using the booster seat.  Had the defendant DJG properly designed, manufactured, marketed, instructed, warned and sold the Ambassador booster seat so as not to be defective and unreasonably dangerous, Scout would have survived this accident.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands judgment in his favor from a jury of his peers against JDG pursuant to the Alabama Wrongful Death Act, Code of Alabama §6-5-410, a punitive damages award in an amount sufficient to punish said Defendant/wrongdoer and to deter future similar wrongs, post-judgment interest, costs, and any and all other relief which is proper.

## COUNT II

### Negligence

40. Plaintiff incorporates each and every allegation and averment contained in each and every preceding paragraph as if they were fully set forth herein.

41. Defendant DJG was negligent in the design, manufacture, testing, warnings, distribution and/or sale of the Ambassador booster seat.

42. The Ambassador booster seat should have been designed, developed and engineered to protect children such as Scout in a reasonably foreseeable accident, which it was not.

43. Defendant DJG designed, developed, engineered and marketed the Ambassador booster seat in a dangerously defective and unreasonably unsafe manner. This design made it reasonably foreseeable that a child of Scout's age and size would suffer serious injuries or death through the use of the Ambassador booster seat in reasonably foreseeable accidents.

44. The manner in which the subject accident occurred was reasonably foreseeable.

45. The design of the Ambassador booster seat was so unreasonably and dangerously defective as to expose its users to an unreasonable risk of harm. The defendant DJG knew or should have known that the use of this seat by children of Scout's age and size, to whom the seat was marketed, would lead

to the likelihood of serious injury and/or death in a reasonably foreseeable accident due to its design.

46.     At the time of the subject accident, the subject Ambassador booster seat involved in this accident was in substantially the same condition as it was on the date of its manufacture.

47.     The Ambassador booster seat was unreasonably dangerous and defective in its design and/or manufacture in that it was designed, developed, engineered, tested, manufactured, distributed, marketed, and/or sold in a dangerous and defective condition.

48.     As a direct and proximate consequence of the unreasonably dangerous design and/or manufacture of the subject Ambassador booster seat, Landlee Scout Brewster, while restrained in the subject Ambassador booster seat in accordance with the directions provided by the defendant DJG suffered fatal injuries related to his use of the Ambassador booster seat in an otherwise survivable accident.  Z.M., Scout's fellow rear-seat passenger was subjected to the same accident forces as Scout, but Z.M. sustained only a minor injury in the accident.

49.     As a direct and proximate result of the negligence of the defendant DJG, Landlee Scout Brewster is now deceased.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands judgment in his favor from a jury of his peers against DJG pursuant to the Alabama Wrongful Death Act, Code of Alabama §6-5-410, a punitive damages award in an amount sufficient to punish said Defendant/wrongdoer and to deter future similar wrongs, post-judgment interest, costs, and any and all other relief which is proper.

## COUNT III

### Wantonness

50. Plaintiff incorporates each and every allegation and averment contained in each and every preceding paragraph as if they were fully set forth herein.

51. Defendant DJG was wanton in the design, manufacture, testing, warnings, distribution and/or sale of the Ambassador booster seat.

52. The Ambassador booster seat should have been designed, developed and engineered to protect children such as Scout in a reasonably foreseeable accident, which it was not.

53. Defendant DJG designed, developed, engineered and marketed the Ambassador booster seat in a dangerous and unreasonably unsafe manner, the conduct of which constitutes reckless and conscious disregard for the safety of others. This design made it reasonably foreseeable that a child of

Scout's size would suffer serious injuries or death through the use of the Ambassador booster seat in reasonably foreseeable accidents.

54. The manner in which the subject accident occurred was reasonably foreseeable.

55. The design of the Ambassador booster seat was so unreasonably and dangerously defective as to expose its users to an unreasonable risk of harm, including death.  The defendant DJG knew or should have known that the use of this seat by children of Scout's size, to whom the seat was marketed, would lead to the likelihood of serious injury and/or death in a reasonably foreseeable accident due to its design and its actions constitute reckless and conscious disregard for the safety of others.

56. At the time of the subject accident, the subject Ambassador booster seat involved in this accident was in substantially the same condition as it was on the date of its manufacture.

57. The Ambassador booster seat was unreasonably dangerous and defective in its design and/or manufacture in that it was designed, developed, engineered, tested, manufactured, distributed, marketed, and/or sold in a dangerous and defective condition with reckless and conscious disregard for the safety of others.

58. As a direct and proximate consequence of the unreasonably dangerous design and/or manufacture of the subject Ambassador booster seat, Landlee Scout Brewster, while restrained in the subject Ambassador booster seat in accordance with the directions provided by the defendant DJG, suffered fatal injuries related to her use of the Ambassador booster seat in an otherwise survivable accident. Z.M., Scout's fellow rear-seat passenger was subjected to the same accident forces as Scout, but Z.M. sustained a minor injury in the accident.

59. As a direct and proximate result of the wanton conduct of the defendant DJG, Landlee Scout Brewster is now deceased.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands judgment in his favor from a jury of his peers against JDG pursuant to the Alabama Wrongful Death Act, Code of Alabama §6-5-410, a punitive damages award in an amount sufficient to punish said Defendant/wrongdoer and to deter future similar wrongs, post-judgment interest, costs, and any and all other relief which is proper.

## COUNT IV

### Negligent Failure to Warn

60. The Plaintiff incorporates each and every allegation and averment contained in each and every preceding paragraph as if they were fully set forth herein.

61. The Ambassador booster seat was defective when it left the control of DJG and entered the marketplace.

62. DJG knew or should have known of the substantial dangers involved in the reasonably foreseeable use of Ambassadors, whose defective design, manufacturing, and lack of sufficient warnings caused them to have an unreasonably dangerous propensity to cause catastrophic injuries and/or death.

63. DJG negligently failed to adequately warn of the substantial dangers known or knowable at the time of the Ambassador's design, manufacture and distribution.

64. DJG negligently failed to provide adequate warnings, instructions, guidelines or admonitions to members of the consuming public, including Plaintiff, of the design and manufacturing defects, which DJG knew or reasonably should have known to have existed in the Ambassador booster seat.

65. DJG knew that these substantial dangers are not readily recognizable to an ordinary consumer and that consumers would purchase and use the products.

66. At the time of Scout's injuries, the Ambassador was being used in the manner intended by DJG and in a manner that was reasonably foreseeable by DJG as involving a substantial danger that was not readily apparent to its users.

67. As a result of DJG's negligent failure to warn of the danger of the Ambassador when used for its intended purpose, Scout died on December 20, 2013.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands judgment in his favor from a jury of his peers against JDG pursuant to the Alabama Wrongful Death Act, Code of Alabama §6-5-410, a punitive damages award in an amount sufficient to punish said Defendant/wrongdoer and to deter future similar wrongs, post-judgment interest, costs, and any and all other relief which is proper.

## Count V

## Breach of Implied Warranties of Fitness For a Particular Purpose

68. The Plaintiff incorporates each and every allegation and averment contained in each and every preceding paragraph as if they were fully set forth herein.

69. The Plaintiff relied upon the skill of DJG, as a designer and manufacturer of children's safety seats, to manufacture a safety device that would protect Scout and other similarly-situated children in the event of an accident.

70. The Ambassador booster seat was purchased in reliance upon the judgment of DJG to market appropriate booster seats for a child of Scout's age and size and relied upon DJG's representations about the appropriate height and weight considerations for the Ambassador booster seat.

71. DJG had a duty to the Plaintiff and others to supply suitable goods for the purpose they were intended.

72. DJG breached its implied warranty of fitness for a particular purpose and the duty it owed to the Plaintiff and others as that duty relates to the marketing and sale of the Ambassador.

73. As a proximate cause of DJG's breach of the implied warranty of fitness for a particular purpose as it relates to the marketing and sale of the Ambassador, Scout suffered fatal injuries due to the failure of the Ambassador to protect his person during the December 20, 2013 wreck.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands judgment in his favor from a jury of his peers against JDG.  The Plaintiff requests an award of compensatory damages in an amount determined by a jury together with interest, costs and all other damages and other relief which may be just and proper.

## COUNT VI

### Breach of Express Warranties

74. The Plaintiff incorporates each and every allegation and averment of contained in each and every preceding paragraph as if they were fully set forth herein.

75. DJG expressly warranted to members of the general public, including Scout, that the Ambassador was of merchantable quality and safe for its purpose, to wit: for use as a safety device for children traveling in motor vehicles to allow proper positioning of the vehicle's restraint system. Instead, the Ambassador became the instrument of Scout's death.

76. This warranty extended to the plaintiff's decedent.

77. The Ambassador was not safe for its intended use nor was it of merchantable quality as warranted by DJG in that it was defectively designed, thereby dangerously exposing the user of the Ambassador booster seat to serious injury and death.

78.     As a result of DJG's breach of express warranty, Scout sustained blunt force body trauma and blunt cervical cord traumatic injury.

79.     These severe injuries caused Scout severe pain and suffering between the time he sustained these injuries and the time of his death.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands judgment in his favor from a jury of his peers against JDG.  The Plaintiff requests an award of compensatory damages in an amount determined by a jury together with interest, costs and all other damages and other relief which may be just and proper.

## Jury Demand

80.     Pursuant to Fed. R. Civ. P. 38(b), the Plaintiff demands a trial struck by jury.

                                                                         */s/ D. Bruce Petway*
                                                                         D. Bruce Petway (ASB-8187-T39D)
                                                                           Attorney for the Plaintiff

**Of Counsel**:
PETWAY OLSEN, LLC.
600 Vestavia Parkway
Suite 220
Birmingham, AL  35216
205/733-1595
bpetway@lawpc.com

                                                                        */s/ H. Gregory Harp*
                                                                         H. Gregory Harp (ABS-0904-T75H)
                                                                           Attorney for Plaintiff

Of Counsel:

GREGORY HARP, LLC
459 Main Street
Suite 101-266
Trussville, AL  35173
205/544-3132
gh@gregoryharplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of July, 2016, I sent the foregoing via electronic filing of the Court, which will send notification to the following:

H. Gregory Harp, Esq.
GREGORY HARP, LLC
459 Main Street
Suite 101-266
Trussville, AL 35173

Harlan I. Prater, IV (PRA004)
hprater@lightfootlaw.com
Sanford G. Hooper (HOO033)
shooper@lightfootlaw.com
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL  35203-3200
(205) 581-0700
(205) 581-0799 (Facsimile)

Jonathan Judge, Esq.
jjudge@schiffhardin.com
Matthew Schilz, Esq.
MSchiltz@schiffhardin.com

SCHIFF HARDIN LLP  
233 South Wacker Drive  
Suite 6600  
Chicago, IL 60606

/s/ D. Bruce Petway  
Of Counsel