FILED
2016 Jul-15  PM 02:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| ALFRED BREWSTER, as Administrator of the Estate of and next friend of his Deceased minor grandson Landlee Scout Brewster, <br><br> Plaintiff, <br><br> v. <br><br> DOREL JUVENILE GROUP, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) Case No.: 4:15 CV-02285-VEH |

## ANSWER TO FIRST AMENDED COMPLAINT

COMES NOW the Defendant, Dorel Juvenile Group, Inc. ("DJG"), by and through its attorneys Lightfoot, Franklin & White, L.L.C., and Schiff Hardin LLP, and for its Answer to Plaintiff's First Amended Complaint, states as follows:

### PARTIES

1.  The Plaintiff Alfred Brewster ("Plaintiff") at all times relevant was and is a resident of Cherokee County, Alabama.

**ANSWER:**    DJG lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1.

2.  Scout, at all times relevant was a minor under the age of three (3) and a resident of Cherokee County, Alabama.

**ANSWER:**    DJG lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2.

3.  The plaintiff is the grandfather of Landlee Scout Brewster, whose mother died in the subject accident and whose father is unknown. Plaintiff is

Landlee Scout Brewster's next living friend. Plaintiff is the administrator of the Estate of Landlee Scout Brewster.

**ANSWER:**        DJG lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3.

4.        Dorel Juvenile Group, Inc. ("DJG") is a Massachusetts corporation with its principal place of business at 2525 State Street, Columbus, Indiana. Service of process upon Defendant can be had by serving its registered agent for service, David Taylor, 2525 State Street, Columbus, Indiana 47201.

**ANSWER:**        DJG denies that David Taylor is its agent for service.   DJG admits the remaining allegations contained in Paragraph 4.

## STATEMENT OF JURISDICTION

5.        Jurisdiction and venue are proper in the United States District Court for the Northern District of Alabama, Middle Division pursuant to 28 U.S.C. §1332, as amended, in that there is a complete diversity of citizenship and the matter in controversy exceeds the sum of Seventy Five Thousand Dollars ($75,000) exclusive of interest and costs.

**ANSWER:**        DJG admits the allegations contained in Paragraph 5 based solely on the unproven allegations in Plaintiff's Amended Complaint.

6.        DJG conducts significant business in this District, through the advertising, promotion and sales of its products including the defective product in the instant case, the Cosco Ambassador Booster Seat.

**ANSWER:**        Denied.

## STATEMENT OF VENUE

7.        Venue is proper in the Northern District of Alabama, Middle Division, pursuant to 28 U.S.C. Section 1391 because the incident giving rise to this action occurred in Cherokee County, Alabama, which is located in the Middle Division of this judicial district.

**ANSWER:**        DJG admits the allegations contained in Paragraph 7 based solely on the unproven allegations in Plaintiff's Amended Complaint.

## FACTUAL ALLEGATIONS

8.      DJG sells products under the brand name Cosco.

**ANSWER:**      Admitted.

9.      Among the products sold by DJG under the Cosco® brand name, is the Ambassador™ Auto Booster Car Seat –Model Number 22293-BCG (the "Ambassador").

**ANSWER:**      DJG denies that it owns a trademark registration for "Ambassador."  DJG admits the remaining allegations contained in Paragraph 9.

10.      On December 20, 2013, Scout was riding as a passenger in the back of a four door Honda Accord (the "Honda") in Cherokee County, Alabama.

**ANSWER:**      Admitted.

11.      While riding as a rear seat passenger in the Honda, Scout was properly seated in the subject Ambassador booster seat.

**ANSWER:**      DJG lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11.

12.      At all times relevant and material, Scout was within the height and weight guidelines set forth and issued by DJG for use of the Ambassador booster seat.

**ANSWER:**      DJG lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12.

13.      On December 20 2013, while Scout was a passenger in the rear of the Honda and was seated in the subject Ambassador booster seat, the Honda was involved in a collision with another vehicle on Highway 35, located in Gaylesville, Cherokee County, Alabama.

**ANSWER:**      Admitted.

14.      Prior to the accident, Scout had been observed to be correctly positioned and belted into the Ambassador by his grandfather, the Plaintiff.

**ANSWER:**        DJG lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 14.

15.    Scout's three-year-old cousin Z.M. was also a passenger in the rear seat of the Honda on December 20, 2013.

**ANSWER:**        DJG admits that Z.M. was a passenger in the rear seat of the

Honda on December 20, 2013, but lacks knowledge or information sufficient to form a

belief as to the truth of the remaining allegations contained in Paragraph 15.

16.    At the time of the accident on December 20, 2013, Z.M. was secured in a car seat of a different make and model than that of the Ambassador.

**ANSWER:**        Admitted.

17.    The Plaintiff had also observed Z.M. in his car seat just prior to the December 20, 2013 accident, just as he had with Scout.

**ANSWER:**        DJG lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 17.

18.    Not long after Scout and Z.M. were secured into the rear seat of the Honda by the Plaintiff, the Honda collided with another vehicle.

**ANSWER:**        DJG lacks knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 18.

19.    As a result of the negligent design of the Ambassador, during the collision, Scout suffered blunt force body trauma and injury to his intestines.

**ANSWER:**        Denied.

20.    Because of the design defects inherent in the Ambassador during the wreck, though placed and secured in accordance with DJG instructions, which were inadequate and dangerous, Scout died in the subject accident from injuries caused by his use of the Ambassador booster seat.

**ANSWER:**     DJG lacks knowledge or information sufficient to form a belief as to the truth of whether the Ambassador was placed and secured in accordance with DJG instructions.  DJG denies the remaining allegations contained in Paragraph 20.

21.     During the collision, Scout's fellow rear-seat passenger Z.M. suffered only a scratched nose.

**ANSWER:**     DJG lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21.

22.     Z.M. was treated and released from a hospital the same day of the accident.

**ANSWER:**     DJG lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22.

23.     The Cherokee County Coroner pronounced Scout dead at the scene of the accident on December 20, 2013 at 3:30 p.m.

**ANSWER:**     DJG admits that the Coroner's report states that Scout was pronounced dead on the date and time referenced; however, DJG lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23.

24.     DJG, at all times relevant was and is engaged in the business of designing the Ambassador.

**ANSWER:**     DJG admits that it has designed "Ambassador" booster seats. DJG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 24.

25.     DJG, at all times relevant was and is engaged in the business of construction of the Ambassador.

**ANSWER:**        DJG admits that it has manufactured "Ambassador" booster seats.  DJG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 25.

26.    DJG, at all times relevant was and is engaged in the business of assembling the Ambassador.

**ANSWER:**        DJG admits that it has assembled "Ambassador" booster seats. DJG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 26.

27.    DJG, at all times relevant was and is engaged in the business of testing the Ambassador.

**ANSWER:**        DJG admits that it has tested "Ambassador" booster seats." DJG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 27.

28.    DJG, at all times relevant was and is engaged in the business of preparing any warning labels affixed to the Ambassador.

**ANSWER:**        DJG admits that it has prepared language for warning labels affixed to its Ambassador booster seat.  DJG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 28.

29.    DJG, at all times relevant was and is engaged in the business of marketing the Ambassador for retail sale.

**ANSWER:**        DJG admits that it has prepared catalogs intended for retailers that featured the Ambassador and that it maintains a website.  DJG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 29.

30.     DJG, at all times relevant was and is engaged in the business of packaging the Ambassador.

**ANSWER:**     DJG admits that it has packaged "Ambassador" booster seats." DJG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 30.

31.     DJG, at all times relevant was and is engaged in the business of affixing all labeling found on the defective Ambassador product.

**ANSWER:**     DJG admits that it affixed the labeling to the subject Ambassador.  DJG denies that the Ambassador was or is defective in any way, and denies all remaining allegations in Paragraph 31.

32.     The Ambassador reached Scout, the end user without any substantial change in the condition in which it was sold by DJG.

**ANSWER:**     DJG lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32.

## COUNT I

### Alabama Extended Manufacturer's Liability Doctrine (AEMLD)

33.     Plaintiffs incorporate each and every allegation and averment of /or contained in each and every preceding paragraph as if they were fully set forth herein.

**ANSWER:**     DJG repeats its answers to the allegations contained in Paragraphs 1–32, as if fully set forth herein.

34.     Defendant DJG designed, developed, engineered, tested, manufactured, distributed, marketed and sold the subject Ambassador car seat and reasonably expected it to reach the ultimate consumer in the condition it was in at the time of the subject accident.

**ANSWER:**        DJG admits that it designs, manufactures, assembles, inspects, tests, distributes, and sells Ambassador child restraint systems like the subject Ambassador, and expects them to reach consumers in the same condition in which DJG distributed them.  DJG lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 34.

35.    The subject Ambassador booster seat remained unchanged from the time it was originally manufactured, distributed and sold by DJG until it reached the plaintiff. The Ambassador booster seat was defective and in an unreasonably dangerous condition when it left the hands of the defendant DJG and remained defective and unreasonably dangerous at all times thereafter until it ultimately caused the death of Scout Brewster.

**ANSWER:**        DJG lacks knowledge or information sufficient to form a belief as to the truth of the whether the Ambassador booster seat remained unchanged from the time it was originally manufactured, distributed, and sold by DJG until it reached the plaintiff.  DJG denies the remaining allegations contained in Paragraph 35.

36.    At the time the Ambassador booster seat was placed in to the stream of commerce, it was, or should have been, reasonably expected and foreseeable that the booster seat would be used by persons such as the plaintiff in the manner and application in which it was being used at the time of Scout's death.

**ANSWER:**        DJG lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36.

37.    With respect to the design of the Ambassador booster seat, at the time it left the control of the defendant DJG there were safer alternative designs. Specifically, there were alternative designs that, in reasonable probability would have prevented Scout's death. Furthermore, such safer alternative designs were economically and technologically feasible at the time the product left the control of defendant DJG by the application of existing or reasonably achievable scientific knowledge.

**ANSWER:**        Denied.

38.     At the time the Ambassador booster seat left the control of defendant DJG, it was defective and unreasonably dangerous in that it was not adequately designed, manufactured or marketed to minimize the risk of injury or death. By way of example and without limitation, the Ambassador booster seat was unreasonably, dangerously defective and unreasonably dangerous insofar as it was not properly designed for use by a child of the size indicated on the seat and that the Ambassador booster seat was defectively designed. Moreover, the defendant DJG failed to provide adequate instructions and warnings regarding the proper and safe use of the child restraint system and did not instruct or warn as to the manner to avoid the risks and danger involved, including but not limited to the failure to warn that the system is inadequate to protect small children of Scout's age in foreseeable collisions. The warnings and instructions provided were not adequate because they did not warn that a child must be over 4 years of age to safely use the product. Further, the Ambassador booster seat was defectively marketed in that the defendant DJG indicates the booster seat is safe for someone Scout's size and age, when it is not.

**ANSWER:**      Denied.

39.     As a direct and proximate consequence of the defective and unreasonably dangerous design, manufacture, sale, and lack of adequate warnings and instructions on the subject Ambassador booster seat, Scout was killed while using the booster seat. Had the defendant DJG properly designed, manufactured, marketed, instructed, warned and sold the Ambassador booster seat so as not to be defective and unreasonably dangerous, Scout would have survived this accident.

**ANSWER:**      Denied.

## COUNT II

### Negligence

40.     Plaintiff incorporates each and every allegation and averment contained in each and every preceding paragraph as if they were fully set forth herein.

**ANSWER:**      DJG repeats its answers to the allegations contained in

Paragraphs 1–39, as if fully set forth herein.

41.     Defendant DJG was negligent in the design, manufacture, testing, warnings, distribution and/or sale of the Ambassador booster seat.

**ANSWER:**          Denied.

42.     The Ambassador booster seat should have been designed, developed and engineered to protect children such as Scout in a reasonably foreseeable accident, which it was not.

**ANSWER:**          Denied.

43.     Defendant DJG designed, developed, engineered and marketed the Ambassador booster seat in a dangerously defective and unreasonably unsafe manner. This design made it reasonably foreseeable that a child of Scout's age and size would suffer serious injuries or death through the use of the Ambassador booster seat in reasonably foreseeable accidents.

**ANSWER:**          Denied.

44.     The manner in which the subject accident occurred was reasonably foreseeable.

**ANSWER:**          DJG lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 44.

45.     The design of the Ambassador booster seat was so unreasonably and dangerously defective as to expose its users to an unreasonable risk of harm. The defendant DJG knew or should have known that the use of this seat by children of Scout's age and size, to whom the seat was marketed, would lead to the likelihood of serious injury and/or death in a reasonably foreseeable accident due to its design.

**ANSWER:**          Denied.

46.     At the time of the subject accident, the subject Ambassador booster seat involved in this accident was in substantially the same condition as it was on the date of its manufacture.

**ANSWER:**          DJG lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 46.

47.    The Ambassador booster seat was unreasonably dangerous and defective in its design and/or manufacture in that it was designed, developed, engineered, tested, manufactured, distributed, marketed, and/or sold in a dangerous and defective condition.

**ANSWER:**        Denied.

48.    As a direct and proximate consequence of the unreasonably dangerous design and/or manufacture of the subject Ambassador booster seat, Landlee Scout Brewster, while restrained in the subject Ambassador booster seat in accordance with the directions provided by the defendant DJG suffered fatal injuries related to his use of the Ambassador booster seat in an otherwise survivable accident. Z.M., Scout's fellow rear-seat passenger was subjected to the same accident forces as Scout, but Z.M. sustained only a minor injury in the accident.

**ANSWER:**        Denied.

49.    As a direct and proximate result of the negligence of the defendant DJG, Landlee Scout Brewster is now deceased.

**ANSWER:**        Denied.

## COUNT III

### Wantonness

50.    Plaintiff incorporates each and every allegation and averment contained in each and every preceding paragraph as if they were fully set forth herein.

**ANSWER:**        DJG repeats its answers to the allegations contained in

Paragraphs 1–49, as if fully set forth herein.

51.    Defendant DJG was wanton in the design, manufacture, testing, warnings, distribution and/or sale of the Ambassador booster seat.

**ANSWER:**        Denied.

52.    The Ambassador booster seat should have been designed, developed and engineered to protect children such as Scout in a reasonably foreseeable accident, which it was not.

**ANSWER:**        Denied.

53.      Defendant DJG designed, developed, engineered and marketed the Ambassador booster seat in a dangerous and unreasonably unsafe manner, the conduct of which constitutes reckless and conscious disregard for the safety of others. This design made it reasonably foreseeable that a child of Scout's size would suffer serious injuries or death through the use of the Ambassador booster seat in reasonably foreseeable accidents.

**ANSWER:**        Denied.

54.      The manner in which the subject accident occurred was reasonably foreseeable.

**ANSWER:**        DJG lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 54.

55.      The design of the Ambassador booster seat was so unreasonably and dangerously defective as to expose its users to an unreasonable risk of harm, including death. The defendant DJG knew or should have known that the use of this seat by children of Scout's size, to whom the seat was marketed, would lead to the likelihood of serious injury and/or death in a reasonably foreseeable accident due to its design and its actions constitute reckless and conscious disregard for the safety of others.

**ANSWER:**        Denied.

56.      At the time of the subject accident, the subject Ambassador booster seat involved in this accident was in substantially the same condition as it was on the date of its manufacture.

**ANSWER:**        DJG lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56.

57.      The Ambassador booster seat was unreasonably dangerous and defective in its design and/or manufacture in that it was designed, developed, engineered, tested, manufactured, distributed, marketed, and/or sold in a dangerous and defective condition with reckless and conscious disregard for the safety of others.

**ANSWER:**        Denied.

58.    As a direct and proximate consequence of the unreasonably dangerous design and/or manufacture of the subject Ambassador booster seat, Landlee Scout Brewster, while restrained in the subject Ambassador booster seat in accordance with the directions provided by the defendant DJG, suffered fatal injuries related to her use of the Ambassador booster seat in an otherwise survivable accident. Z.M., Scout's fellow rear-seat passenger was subjected to the same accident forces as Scout, but Z.M. sustained a minor injury in the accident.

**ANSWER:**         Denied.

59.    As a direct and proximate result of the wanton conduct of the defendant DJG, Landlee Scout Brewster is now deceased.

**ANSWER:**         Denied.

## COUNT IV

## Negligent Failure to Warn

60.    The Plaintiff incorporates each and every allegation and averment contained in each and every preceding paragraph as if they were fully set forth herein.

**ANSWER:**         DJG repeats its answers to the allegations contained in

Paragraphs 1–59, as if fully set forth herein.

61.    The Ambassador booster seat was defective when it left the control of DJG and entered the marketplace.

**ANSWER:**         Denied.

62.    DJG knew or should have known of the substantial dangers involved in the reasonably foreseeable use of Ambassadors, whose defective design, manufacturing, and lack of sufficient warnings caused them to have an unreasonably dangerous propensity to cause catastrophic injuries and/or death.

**ANSWER:**         Denied.

63.    DJG negligently failed to adequately warn of the substantial dangers known or knowable at the time of the Ambassador's design, manufacture and distribution.

**ANSWER:**         Denied.

64.     DJG negligently failed to provide adequate warnings, instructions, guidelines or admonitions to members of the consuming public, including Plaintiff, of the design and manufacturing defects, which DJG knew or reasonably should have known to have existed in the Ambassador booster seat.

**ANSWER:**     Denied.

65.     DJG knew that these substantial dangers are not readily recognizable to an ordinary consumer and that consumers would purchase and use the products.

**ANSWER:**     Denied.

66.     At the time of Scout's injuries, the Ambassador was being used in the manner intended by DJG and in a manner that was reasonably foreseeable by DJG as involving a substantial danger that was not readily apparent to its users.

**ANSWER:**     DJG lacks knowledge or information sufficient to form a belief as to the truth of whether, at the time of Scout's injuries, the Ambassador was being used by Scout in the manner alleged.  DJG denies the remaining allegations contained in Paragraph 66.

67.     As a result of DJG's negligent failure to warn of the danger of the Ambassador when used for its intended purpose, Scout died on December 20, 2013.

**ANSWER:**     Denied.

## Count V

## Breach of Implied Warranties of Fitness For a Particular Purpose

68.     The Plaintiff incorporates each and every allegation and averment contained in each and every preceding paragraph as if they were fully set forth herein.

**ANSWER:**     DJG repeats its answers to the allegations contained in Paragraphs 1–67, as if fully set forth herein.

69.     The Plaintiff relied upon the skill of DJG, as a designer and manufacturer of children's safety seats, to manufacture a safety device that would protect Scout and other similarly-situated children in the event of an accident.

**ANSWER:**     DJG lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 69.

70.     The Ambassador booster seat was purchased in reliance upon the judgment of DJG to market appropriate booster seats for a child of Scout's age and size and relied upon DJG's representations about the appropriate height and weight considerations for the Ambassador booster seat.

**ANSWER:**     DJG lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 70.

71.     DJG had a duty to the Plaintiff and others to supply suitable goods for the purpose they were intended.

**ANSWER:**     DJG admits that the law imposes certain duties on the designers and manufacturers of child restraint systems, but DJG denies that those duties are as stated in Paragraph 71.

72.     DJG breached its implied warranty of fitness for a particular purpose and the duty it owed to the Plaintiff and others as that duty relates to the marketing and sale of the Ambassador.

**ANSWER:**     Denied.

73.     As a proximate cause of DJG's breach of the implied warranty of fitness for a particular purpose as it relates to the marketing and sale of the Ambassador, Scout suffered fatal injuries due to the failure of the Ambassador to protect his person during the December 20, 2013 wreck.

**ANSWER:**     Denied.

## COUNT VI

### Breach of Express Warranties

74.     The Plaintiff incorporates each and every allegation and averment of contained in each and every preceding paragraph as if they were fully set forth herein.

**ANSWER:**     DJG repeats its answers to the allegations contained in

Paragraphs 1–73, as if fully set forth herein.

75.     DJG expressly warranted to members of the general public, including Scout, that the Ambassador was of merchantable quality and safe for its purpose, to wit: for use as a safety device for children traveling in motor vehicles to allow proper positioning of the vehicle's restraint system. Instead, the Ambassador became the instrument of Scout's death.

**ANSWER:**     Denied.

76.     This warranty extended to the plaintiff's decedent.

**ANSWER:**     Denied.

77.     The Ambassador was not safe for its intended use nor was it of merchantable quality as warranted by DJG in that it was defectively designed, thereby dangerously exposing the user of the Ambassador booster seat to serious injury and death.

**ANSWER:**     Denied.

78.     As a result of DJG's breach of express warranty, Scout sustained blunt force body trauma and blunt cervical cord traumatic injury.

**ANSWER:**     Denied.

79.     These severe injuries caused Scout severe pain and suffering between the time he sustained these injuries and the time of his death.

**ANSWER:**     DJG admits that Scout suffered severe injuries but lacks

knowledge or information sufficient to form a belief as to the truth of the remaining

allegations contained in Paragraph 79.

## Jury Demand

80.     Pursuant to Fed R. Civ. P. 38(b), the Plaintiff demands a trial struck by jury.

**ANSWER:**          Admitted.

## ADDITIONAL DEFENSES

### First Defense

Any recovery by Plaintiff may be barred or reduced by Plaintiff's own negligence, contributory negligence, or carelessness.

### Second Defense

Any recovery by Plaintiff may be barred or reduced by the negligence, fault, or carelessness of others that was a proximate or the sole cause of the accident and for whose conduct DJG is not responsible.

### Third Defense

Any recovery by Plaintiff may be barred or reduced by the abnormal use/alteration/misuse of the product and/or failure to read or heed the warnings and instructions accompanying the product by Plaintiff or other persons over whom DJG had no control.

### Fourth Defense

DJG complied with all applicable statutes and regulations existing at the time of manufacture that prescribed standards for design, inspection, testing, manufacture, labeling, packaging, warning, or instructions for the use of the product.

## Fifth Defense

The design, testing, and labeling of the subject product was in conformity with the prevailing state of the art in the industry at the time the product was first sold.

## Sixth Defense

DJG may be entitled to a set-off in the event Plaintiff receives payment from any source relating to the accident.

## Seventh Defense

DJG committed no act or omission that was fraudulent, malicious, oppressive, willful, wanton, reckless, or grossly negligent, and therefore, any award of punitive damages is barred.

## Eighth Defense

While DJG denies that it is liable for punitive damages, any award of punitive damages by a jury under Alabama law cannot be sustained when that jury:  (1) is not provided constitutionally adequate standards of sufficient clarity for determining the appropriate imposition of, and the appropriate size of, a punitive damages award; (2) is not adequately instructed on the limits of punitive damages imposed by the applicable principles of deterrence and punishment; (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole or in part, on the basis of invidiously discriminatory characteristics, including without limitation, the residence, wealth and corporate status of DJG; (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the

conduct or mental state that makes punitive damages permissible; (5) is not properly instructed regarding plaintiff's burden of proof with respect to each and every element of a claim for punitive damages; or (6) is not subject to trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of constitutionally adequate and objective standards, as that would violate DJG's due process and equal protection rights guaranteed by the Fifth and the Fourteenth Amendments to the United States Constitution and by Section 13 of the Alabama Constitution, and would be improper under the common law and public policies of the state of Alabama.

## Ninth Defense

While DJG denies that it is liable for punitive damages, it states that Plaintiff's claim for punitive damages cannot be sustained because an award of punitive damages under Alabama law, though subject to a predetermined limit, provides no protection against multiple awards for the same course of conduct, would violate DJG's due process rights guaranteed by the Fifth and the Fourteenth Amendments to the United States Constitution and by Section 13 of the Alabama Constitution, and would also violate DJG's right not to be subjected to an excessive award in violation of the Eighth Amendment to the United States Constitution, and Section 15 of the Alabama Constitution, and would be improper under the common law and public policies of the state of Alabama.

**Tenth Defense**

While DJG denies that it is liable for punitive damages, it states that Plaintiff's claim for punitive damages cannot be sustained because Alabama law regarding the standards for determining liability for punitive damages failed to give DJG prior notice of the conduct for which punitive damages may be imposed and is void for vagueness in violation of DJG's due process rights guaranteed by the Fifth and the Fourteenth Amendments to the United States Constitution and Section 13 of the Alabama Constitution, and would be improper under the common law and public policies of the state of Alabama.

**Eleventh Defense**

While DJG denies that it is liable for any damages, it states that any damages award that utilizes the Alabama's joint and several liability scheme would be unconstitutional, as this scheme is violative of DJG's due process and equal protection guarantees under the United States and Alabama Constitutions because the Alabama joint and several liability scheme, under *Holcim (US), Inc. v. Ohio Cas. Ins. Co.*, 38 So. 3d 722, 729 (Ala. 2009), violates DJG's due process guarantees because no legitimate state interest supports Alabama's joint and several liability scheme, and, furthermore, no rational relationship exists between a legitimate state interest and the promotion of the Alabama joint and several liability scheme. Additionally, the Alabama system of assessing joint and several liability violates DJG's equal protection guarantees because it operates to create arbitrary classifications of individuals, and to treat similarly situated

individuals dissimilarly under the law. Thus, the scheme is unconstitutional and should not be applied in this action.

## Twelfth Defense

If the product at issue in this lawsuit was manufactured by DJG, any danger or risk associated with its use was either readily apparent, open or obvious, or adequately warned against.

## Thirteenth Defense

If the product that Plaintiff alleges was manufactured by DJG is found to be defective, which is denied, said alleged defect is an inherent characteristic of the product that cannot be eliminated without substantially compromising the product's utility or desirability.

## Fourteenth Defense

The Alabama Extended Manufacturer's Liability Doctrine is constitutionally void in that it operates to create a conclusive presumption that is arbitrary and operates to deny a fair opportunity on the part of the manufacturer to rebut such conclusive presumption and acts to substitute judicial fiat in place of fact in judicial determination of an issue involving property of this Defendant, separately and severally, with the result that it deprives Defendant of property without due process of law and operates to deny Defendant equal protection of the law contrary to the Constitutions of the United States and the State of Alabama.

**Fifteenth Defense**

The procedure and methods asserted for awarding damages for pain and suffering or mental anguish violate the Due Process Clauses of the United States Constitution and the Alabama Constitution because Alabama juries are given no rule, standard, or guideline upon which to rely in calculating such damages.

**Sixteenth Defense**

DJG asserts the protections provided by Ala. Code §§ 6-11-20, 6-11-21, 6-11-23, 6-11-24, and 6-11-27.

**Seventeenth Defense**

DJG avers that Plaintiff's alleged injuries and damages and Scout Brewster's death were the result of the criminal acts of a third party which were not reasonably foreseeable and thus not proximately caused by DJG.

**Eighteenth Defense**

Plaintiff lacks standing to bring some or all of the claims set forth in the Complaint.

**Nineteenth Defense**

DJG avers that Plaintiff's injuries and Scout Brewster's death were the result of an intervening cause other than DJG's alleged conduct or the alleged defects in any product allegedly manufactured by DJG and that the alleged defects and alleged conduct were not the proximate cause of Plaintiff's alleged injuries and damages.

**Twentieth Defense**

DJG denies that it breached any contract or warranty at issue in this lawsuit.

**Twenty-First Defense**

DJG denies that it provided any warranty to Plaintiff and Plaintiff's breach of warranty claims are otherwise barred because: 1) there was no privity of contract between Plaintiff and DJG; 2) Plaintiff failed to give timely notice of any alleged breach of warranty to DJG; 3) Plaintiff did not reasonably rely on any alleged warranty; 4) Plaintiff failed to satisfy all conditions precedent or subsequent to the enforcement of any such alleged warranty; 5) any such alleged warranty was disclaimed, excluded or modified including, without limitation, liability for consequential and incidental damages; 6) the available remedy was limited to repair or replacement of the product; and 7) DJG was not the "seller" of the product as that term is used in Ala. Code § 7-2-103(1)(d).

**Twenty-Second Defense**

DJG avers that the obligations it owed to Plaintiff, if any, are controlled and limited by DJG's standard written limited warranty, including all limitations and exclusions thereof.

**Twenty-Third Defense**

Plaintiff's claims are barred because there is no evidence that Plaintiff would have heeded any different or alternative warnings.

**Twenty-Fourth Defense**

Plaintiff's alleged damages or losses were caused by a failure to follow warnings and instructions supplied with the product, which warnings and instructions adequately warned of the risks involved in the product's use.

**WHEREFORE**, Defendant Dorel Juvenile Group, Inc. respectfully requests that the Complaint against it be dismissed, that judgment be entered in its favor, and that it be awarded its costs and such other relief as the Court deems just.

**DOREL JUVENILE GROUP, INC. HEREBY DEMANDS
A TRIAL BY JURY**

Dated this 15th day of July, 2016.

/s/ Sanford G. Hooper
*One of the Attorneys for Defendant,
Dorel Juvenile Group, Inc.*

OF COUNSEL:
Harlan I. Prater, IV (PRA004)
mailto:hprater@lightfootlaw.comhprater@lightfootlaw.com
Sanford G. Hooper (HOO033)
shooper@lightfootlaw.com
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL  35203-3200
(205) 581-0700
(205) 581-0799 (Facsimile)

Jonathan Judge (Admitted *pro hac vice*)
jjudge@schiffhardin.com
Matthew G. Schiltz (Admitted *pro hac vice*)
mschiltz@schiffhardin.com
SCHIFF HARDIN LLP
233 South Wacker Drive
Suite 6600
Chicago, IL 60606
(312) 258-5587
(312) 258-5600 (Facsimile)

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 15th day of July, 2016, I caused the foregoing document to be served on the following counsel of record via electronic and U.S. Mail:

D. Bruce Petway, Esq.
Petway Olsen, LLC
600 Vestavia Parkway
Suite 220
Birmingham, AL 35216
bpetway@lawpc.com

H. Gregory Harp, Esq.
GREGORY HARP, LLC
459 Main Street
Suite 101-266
Trussville, AL 35173
gh@gregoryharperlaw.com


/s/ Sanford G. Hooper
Counsel for Dorel Juvenile Group, Inc.